FANNIE B. MELENKY, Appellant, *v.* ASHER P. MELEN, Otherwise Known as ISAAC P. MELENKY, and REUBEN MELENKY, Respondents.

Fourth Department, July 1, 1921.

**Dower — action to establish that plaintiff has inchoate right of dower in premises transferred by her husband to son — transfer made before marriage with understanding between parties that land be retransferred on request — refusal of son to retransfer in fraud of plaintiff — lack of seizin in husband during marriage no defense — failure of husband to maintain action no defense to action by wife — complaint — son guilty of breach of legal or equitable duty.**

In an action by a wife to establish an inchoate right of dower in certain premises it appeared that prior to her marriage her husband transferred the property in question to his son for the purpose of management and with the distinct understanding between them that the son would retransfer the property on request; that the plaintiff was informed by her husband before marriage that he was the owner of a large quantity of real estate and relied on the statement in marrying; that the son failed on request of his father to retransfer the property, but did transfer to him a life estate therein.

*Held,* that while the ordinary rule is that no inchoate right of dower can exist where the husband is not seized of the legal estate in lands during coverture, nevertheless, the courts will aid a wife in obtaining that right when the vesting of the legal estate in her husband has been prevented by fraud practiced by someone to her detriment; actual seizin in fact by the husband has not been deemed necessary by the courts in granting the relief.

The fact that the husband, who is still living, did not bring an action to have the property retransferred to him, is not a defense to this action and does not prevent the wife from maintaining an action to establish her interest in the property wrongfully withheld from her husband and herself.

Complaint examined, and *held,* to state sufficient facts to show that the son has been guilty of a breach of legal or equitable duty in failing to justify the trust and confidence his father reposed in him and in fraud of the plaintiff's rights.

CLARK, J., dissents, with memorandum.

APPEAL by the plaintiff, Fannie B. Melenky, from an order of the Supreme Court, made at the Monroe Special Term and entered in the office of the clerk of the county of Monroe on the 11th day of December, 1920, sustaining the demurrer of the defendant, Asher P. Melen, to the complaint, and per-

mitting the plaintiff to serve an amended complaint upon payment of costs within ten days after the service of a copy of said order.

*Heiby W. Ungerer,* for the appellant.

*Bowman & Van Schaick* [*George S. Van Schaick* of counsel], for the respondent Asher P. Melen.

DAVIS, J.:

The defendant Asher P. Melen has demurred to the complaint. We may, therefore, state the admitted facts as follows: The defendants are residents of the city of Rochester and the plaintiff is the wife of the defendant Reuben Melenky. The defendant known as Asher P. Melen is the oldest son of Reuben Melenky by a former marriage, and was associated with his father in the management of the latter's business and property prior to January, 1913, at which latter date the father, then a widower, journeyed to California and there remained for some time because of ill health.

In the month of August, 1914, the plaintiff and the defendant Reuben married in California. Before their marriage the husband had stated to her that he owned a great deal of valuable real estate in the city of Rochester. The plaintiff believed it and relied on the statement in marrying.

During the month of December, 1913, Reuben had executed and delivered to his son Asher a deed conveying certain premises on Front street in Rochester, which the former had theretofore held in fee absolute. The deed was delivered that Asher might hold and manage the premises during the absence of his father, and upon an agreement to reconvey the premises to him upon his demand. No consideration was paid by the grantee. Subsequently the deed was recorded. Similar transactions had theretofore occurred between the father and son, and the premises had always been reconveyed by the son upon the request of the father, who had the utmost confidence in him because of their experience in intimate business relations. On several occasions after the delivery and recording of the deed Asher had stated in writing that the premises so conveyed to him belonged to the father. In August, 1918, Reuben's younger sons were called into the military service, and Asher then requested his father to return to Rochester

and resume the management of his business and real estate. The father returned and demanded a reconveyance of the real estate in question, and then the son said that the real estate belonged to the father, but that he had remarried and because of said remarriage he (Asher) refused to reconvey the premises. Subsequent demands were made and the son finally conveyed to his father a life estate in the premises. This the father accepted and recorded in order to sustain his physical necessities, being aged, ill, infirm, without means and unable to earn a livelihood. Because the son had refused to reconvey the fee for the purpose and with the fraudulent intent of depriving the plaintiff of her dower interest in the premises, the plaintiff brings this action to establish by a judgment of the court that she has an inchoate right of dower in the premises in question.

If this be the true state of facts, then it is evident that the plaintiff has suffered a wrong and that the defendant Asher P. Melen is reaping a profit out of that wrong caused by his own fraud. But it is contended that the courts are powerless to furnish a remedy because at no time since the marriage has the plaintiff's husband been seized of an estate of inheritance, and, therefore, no inchoate right of dower may arise. (Real Prop. Law, § 190.)

Happily, cases of this kind are few and precedents are not, therefore, numerous. Our attention has been called to no case where the precise question here presented has been before the courts; but there are authorities somewhat analogous in their facts, in which substantially the same principle involved here has been established.

We may assume as settled at the outset that an inchoate right of dower is a valuable, substantial interest (*Simar* v. *Canaday*, 53 N. Y. 298), and that a wife may maintain an action in her husband's lifetime to set aside a deed made in fraud of her dower. (*Clifford* v. *Kampfe*, 147 N. Y. 383.)

In *Youngs* v. *Carter* (10 Hun, 194) the facts were that one Daniel S. Youngs was engaged to be married to the plaintiff on the 27th day of August, 1872, but in consequence of his sickness on that day the marriage was postponed to the third of September. On August thirtieth, he, without knowledge of the plaintiff, conveyed real estate of substantial value to

two daughters by a former marriage, and took back from them a lease of the same for his life. After the marriage the wife, learning the facts, brought an action to set the same aside. It was held that the conveyances were a fraud upon the wife, and that the same should be adjudged void as to her inchoate right of dower, and that she might maintain such action during the life of her husband.

We may well quote from the opinion of DANIELS, J., in the case just cited: " The novelty of the case can form no well-founded objection to the jurisdiction over it, if it falls within the limits of any defined equitable principle. That must constitute the test of the court's authority, and not the existence or absence of precedent for the case over which it may be invoked. Those principles are as broad as the just wants and necessities of civilized society require; and it is scarcely possible to imagine a case in which equitable relief may be proper which they do not include. If there are cases of that description, the present one, certainly, is not among them in any view which should be taken of it. For if the plaintiff must fail it must be for want of proof, and not because of any infirmity in the power of the court to administer relief. If her case has been made out it is for the reason that the conveyance which was made was, in the sense in which the term is understood and applied by courts of equity, a fraud upon her contemplated marital rights. That has been defined to include all acts, omissions and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another."

Having in mind the principles of equity jurisdiction just stated, what court can look with complacence upon the state of facts disclosed in the instant case? The father, in accordance with his custom when he wished to relinquish the management of his property temporarily, conveyed it to his son that he might have better control and management thereof while the father was away on a distant journey. It amounted in effect to a power of attorney, and there was the express agreement, as well as the agreement established by custom, that upon demand the legal title should be restored to the

father. It was evidently intended that nothing more than the barren title should pass. The actual ownership still remained with the father, and the record title was to be reconveyed to him upon demand. When demand was made, nothing remained in the son but the product of his own fraud and the naked record title. The father was mature and elected to remarry. He needed no one's consent. Very properly he informed his prospective bride of his ability to maintain her properly in a suitable station in life. The son evidently assumed the prerogative of deciding as to whether his father should remarry, and when the latter married without his consent, the son undertook to punish this disobedience by withholding from him the real estate which the son had agreed to reconvey. The result of this act was, as it was intended to be, a fraud on the legal rights of the plaintiff.

When the father demanded a reconveyance, it was the duty of the son to make it. To refuse was to break his promise and commit a fraud. Had he followed the line of his duty, the father would have been revested with the title of his property and the plaintiff would then have become vested with the inchoate right of dower which she now seeks. If the husband had been guilty of the fraud in conveying his property without consideration to his son immediately preceding the marriage, after making the representations to the plaintiff of his ownership, the authorities are unanimous that the plaintiff might recover. The effect on plaintiff's rights is the same, and there is no discoverable difference in principle if the result is reached through the fraud of the son. It is of small concern who is the active party to the fraud. In either case there would be no actual seizin in the husband at the time of marriage.

But it is urged that there can be no inchoate right of dower because the husband was not seized of a legal estate in lands during coverture. It is true that is the rule ordinarily. But the courts will aid the wife in obtaining that right when the vesting of the legal estate in her husband has been prevented by fraud practiced by some one to her detriment. Actual seizin in fact in the husband has not been deemed necessary by the courts in granting relief. (*Clifford* v. *Kampfe, supra; Douglas* v. *Douglas,* 11 Hun, 406; *Youngs* v. *Carter, supra.*)

In *Douglas* v. *Douglas* (*supra*) the husband fraudulently

induced his wife to join in the conveyance of certain real estate to be given in exchange for other real estate of the same value, by representing to her that she would obtain the same right of dower in the latter as she possessed in what was conveyed. To defraud her of this he caused the land taken in exchange to be conveyed to his sister, who paid no consideration. It was held that the wife was entitled to relief either at law to recover damages for the fraud, or in equity to have a resulting trust in the land conveyed to the sister declared in her favor to the extent of the present value of her inchoate right of dower. The court says (p. 409): " If, upon such a state of facts, there can be no relief either at law or in equity for the plaintiff, then a wife's inchoate right of dower, which the courts adjudge to be valuable property, is rendered valueless by reason of the inefficiency of the courts of justice."

In *Bowery Nat. Bank* v. *Duncan* (12 Hun, 405) a widow was decreed to be entitled to dower interest in property of which her husband was only the equitable owner, he having purchased the real estate under a contract and the conveyance of title had not been made to him before his death.

In *Lugar* v. *Lugar* (160 App. Div. 807) it was held (by a divided court) that a wife had an inchoate right of dower in real estate of which her husband was not in fact seized in fee.

The conclusions we have reached are not in conflict with the principle decided in *Phelps* v. *Phelps* (143 N. Y. 197). In that case the husband and wife were separated. Having money, the husband purchased real estate, and perhaps to prevent its being dowable he took title in the name of another. The wife brought an action in equity to establish and protect her inchoate right of dower in those lands, alleging that the acts were in fraud of her rights. A demurrer to the complaint was sustained in all the courts upon the ground that the husband invested personal property in lands which were never conveyed to him, nor did he have any agreement that they should be conveyed to him — he simply having the beneficial use thereof and the right to ask the dummy to transfer them to others when he made a sale. The principle is stated by Judge GRAY, as follows: " How can seizin be predicated of the plaintiff's husband with respect to the lands purchased through the use of his moneys, but never conveyed, *nor*

*agreed to be conveyed, to him?* The plaintiff, certainly, had no control over the use which her husband chose to make of his personal estate. That was his absolutely and she had no interest in it which she could assert; beyond a claim upon him for the support of herself and their children. He might have chosen to use it in the acquisition of any of the many kinds of personal property, without any right on the part of his wife to complain of, or to interfere in, his acts. Instead of confining his use of his moneys to purchases of personal property, or instead of putting them into land and of taking title to himself, he has adopted methods set forth in this complaint for its use and they were effectual to prevent the vesting in him of any legal estate in the realty, although paid for with his moneys."

There was in the *Phelps* case, of course, no actual conveyance in fraud of the wife of real estate of which the husband was once seized, and no fraudulent failure by a third person to reconvey title to real estate in fact owned by the husband.

It is urged that the husband should bring the action to obtain reconveyance from the son. Very likely he ought; but if he fails to take action to recover his property, should the plaintiff be denied the right to establish her interest in property wrongfully withheld from her husband and herself? We think not. Even if the husband should acquiesce in the fraud of his son, the plaintiff would not thereby be denied a remedy; but, as a matter of fact, the husband has served an answer admitting the facts and joining in her prayer for relief.

On the present state of facts it sufficiently appears that the defendant Asher P. Melen has been guilty of a breach of legal or equitable duty in failing to justify the trust and confidence his father reposed in him, and in fraud of the plaintiff's rights. If our conclusions are sound, it follows that the order should be reversed and the demurrer of the defendant Asher P. Melen should be overruled, with costs.

All concur, KRUSE, P. J., in a separate memorandum, except CLARK, J., who dissents in a memorandum.

KRUSE, P. J. (concurring):

Even though the plaintiff's husband may not have been seized during coverture of the premises, and the plaintiff have

no present right of inchoate dower, it would seem that she might maintain the action. Her husband is the real owner of the premises, he is entitled to have the same reconveyed to him. The defendant refuses to reconvey the premises. Although the husband has demanded such a reconveyance he brings no action to assert his right. She brings the action, making her husband a party. Upon reconveyance to him her dower will immediately attach.

She married her husband upon a statement made by him, and believed by her, that he was a large owner of real property. It turns out that the real property was in his son's name. He desires his wife to have dower, but the son refuses to convey for the reason that he is dissatisfied with the marriage and wants to deprive her of her dower right. It does not lie with him to deprive her of this right. Her right is founded in good conscience and should be protected in equity.

Many years ago Thomas Coke said: " It is a maxim that three things be favored in law; life, liberty and dower." (14 Cyc. 885.) And that is none the less true to-day.

CLARK, J. (dissenting):

As I understand it, the theory on which my associates recommend a reversal of the order in this case is that the plaintiff has been defrauded out of some legal right by the act of defendants. I do not see it that way.

The deed in question from Reuben Melenky to his son, defendant Asher P. Melen, otherwise known as Isaac P. Melenky, was made in December, 1913. Some eight months after that, when the father was in California, he married the plaintiff. This was in August, 1914.

I am unable to find in the record any allegation that when the deed in question was made the elder Melenky was engaged to be married to the plaintiff, or that such marriage was even thought of. There is an allegation in the 3d paragraph of the complaint that prior to plaintiff's marriage to Reuben Melenky he stated to her that he owned a great deal of valuable real estate in Rochester, including the premises referred to, and that she believed said statement, and relied on it.

That is far short of an allegation that when she became engaged to marry the old gentleman he actually owned this

property, and that she promised to marry him relying on the truth of that statement.

I cannot see how any fraud could have been perpetrated on plaintiff by the old gentleman's deeding the property in question to his son before plaintiff's marriage to the father was ever thought of. If plaintiff and her present husband had been engaged to be married at the time of the conveyance, the case of *Youngs* v. *Carter* (10 Hun, 194) would be in point. There a widower was engaged to be married to the plaintiff and the time for the marriage had been fixed. Because of the illness of the prospective bridegroom the marriage was postponed from August 27 to September 3, 1872. Between these dates and on August thirtieth the old gentleman conveyed to children by his first marriage real estate worth $150,000. This all occurred without the knowledge of the prospective bride, and upon her discovering it after her marriage she brought an action to set aside the conveyance in consequence of the fraud practiced on her, and succeeded.

I cannot see where that case is any authority for plaintiff here, for the facts are not similar. There plaintiff and the grantor were actually engaged to be married when the deed was made. Here there was no such relationship, and so far as I can discover in the record, when the deed of the Front street property was made to the son, Reuben Melenky did not even know plaintiff, to say nothing about being engaged to marry her. Therefore, I cannot see how she had any rights, either actual or possible, out of which she could have been defrauded by her husband executing to his son the deed referred to in the complaint.

At no time since plaintiff's marriage to Reuben Melenky has he owned the real property in question, or had any interest in it, excepting a life estate. Plaintiff's right of dower did not attach for the husband was not seized of the property during their marriage. (Real Prop. Law, § 190.)

The husband has not been seized of an estate of inheritance in this property at any time during his marriage to the plaintiff, consequently dower did not attach. (*Phelps* v. *Phelps*, 143 N. Y. 197; *Nichols* v. *Park*, 78 App. Div. 95; *Poillon* v. *Poillon*, 90 id. 71.)

Under the facts as set forth in the complaint and conceded

by the demurrer, I cannot see where, at the time the deed in question was made, plaintiff had any " rights " which could in any way be affected by the conveyance. She was a stranger to the transaction, and at that time was evidently a stranger to all the parties.

While it is true that dower is favored in the law, it is equally true that before a wife can claim it she must bring herself within the statute which gives her the right to assert it.

Plaintiff's husband was not seized of an estate of inheritance in the real estate described in the deed in question at any time during the marriage, and it seems to me by the very language of the statute itself, the husband not having been seized of such an estate during the marriage, plaintiff has not brought herself within the statute whereby she could assert even a contingent dower interest in this property.

I dissent and vote for affirmance of the order and judgment.

Order reversed, with ten dollars costs and disbursements, and the demurrer overruled, with ten dollars costs, with leave to the defendants to plead over within twenty days upon payment of the costs of the motion and of this appeal.